```
UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
                                    :
IN RE: NINE WEST LBO SECURITIES     :
LITIGATION                          :
                                    :
Pertains to:                        :       20-md-2941
                                    :       20-cv-4433
Kirschner, et al. v. Advisors Series:       20-cv-4287
Trust, et al.                       :
                                    :
Kirchner, et al. v. Kimmel, et al.  :
                                    :
------------------------------------x
```

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

This case arises from the 2014 leveraged buyout (the "LBO") of a fashion retail company, The Jones Group, Inc. ("Jones Group"), that sold popular brands such as Nine West and Anne Klein to retailers across the country. On April 8, 2014, a private equity firm Sycamore Partners acquired Jones Group through a merger with one of its subsidiaries (the "2014 Transaction"). It renamed the surviving company Nine West Holdings, Inc. ("NWHI"), and that company eventually went into bankruptcy. See In re Nine West Holdings, Inc., No. 18-10947-SCC (Bankr. S.D.N.Y.) (the "Bankruptcy Case"). Plaintiffs — consisting of Mark S. Kirschner, as Trustee for the Nine West Holdings, Inc. Litigation Trust ("Litigation Trustee"), representing unsecured creditors, and Wilmington Savings Fund Society, FSB, as successor indenture

1

trustee for the 6.875% Senior Notes due 2019, the 8.25% Senior Notes due 2019, and the 6.125% Senior Notes due 2034 of Nine West Holdings, Inc. ("Indenture Trustee" and, together with the Litigation Trustee, "Plaintiffs") — brought these consolidated actions against officers, directors, and shareholders of Jones Group, claiming breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraudulent conveyance, unjust enrichment, and other assorted state law claims arising out of the bankrupting, and bankruptcy, of the company in connection with the LBO. General familiarity with the facts and procedural history of this case is assumed. See In re Nine W. LBO Sec. Litig., 482 F. Supp. 3d 187, 190 (S.D.N.Y. 2020) (Nine West I).

As relevant here, following a series of decisions by this Court and the Second Circuit, only five defendants remain in these consolidated actions. Two of these defendants, Gregg Marks, a defendant in Kirschner et al. v. Kimmel, et al., No. 20-cv-4287-JSR), who received $3,205,789.80 on account of his Jones Group restricted shares and accumulated unpaid dividends on restricted shares ("Restricted Stock Payments"), and Whitney Smith, a defendant in Kirschner, et al. v. Advisors Series Trust, et al., No. 20-cv-4433-JSR, who received $64,500 in Restricted Stock Payments, each move for summary judgment. Both Marks and Smith (collectively, the "Moving Defendants") were employees of Jones Group. In their motions, the Moving Defendants raise three

2

arguments: (1) that the Litigation Trustee's Section 544 claims are time-barred pursuant to Section 546(a) of the Bankruptcy Code; (2) that the Indenture Trustee's claims are time-barred by operation of New York's borrowing statute, CPLR § 202; and (3) that the Litigation Trustee's intentional fraudulent conveyance claims were not pled with sufficient particularity under Fed. R. Civ. P. 9(b). For the reasons set forth in this Opinion and Order, this Court grants the Moving Defendants' summary judgment in part as to the first two arguments and dismisses the Litigations Trustee's Section 544(b) claims and the Indenture Trustee's state-law constructive conveyance claims. The Court denies summary judgment as to the remaining intentional fraudulent conveyance claims.

## LEGAL STANDARDS

Summary judgment is warranted where the moving party shows that "there is no genuine dispute as to any material fact" and that the party is thereby "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a 'genuine issue' exists for summary judgment purposes where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (quoting Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences

3

against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is improper as to any claim where there is any evidence in the record from any source from which a reasonable inference of success could be drawn in favor of the non-moving party. Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

Where, as here, a defendant moves for summary judgment on an affirmative defense like a statute of limitations, the burden is on the defendant to "produce evidence supporting their affirmative defense," and the "absence" of such supporting evidence is sufficient to rule in the plaintiff's favor. Shepard v. Wo Hop City, Inc., 2021 WL 4267527, at *3 & n.4 (S.D.N.Y. Sept. 20, 2021) (cleaned up).

## DISCUSSION

I. Litigation Trustee's Section 544(b) Claims Are Time-Barred Under 11 U.S.C. § 546(a)

The Litigation Trustee seeks to avoid the shareholder transfers to Marks and Smith brought pursuant to Section 544(b) of the Bankruptcy Code. Defendants argue, however, that the federal fraudulent conveyance claims under Section 544(b) are time-barred under Section 546(a) of the Bankruptcy Code, which provides in the relevant part:

(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

4

>   (1) the later of—
>
>>   (A) 2 years after the entry of the order for relief; or
>>   (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or
>
>   (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). Here, NWHI filed for Chapter 11 bankruptcy on April 6, 2018, and an order for relief was filed on that day. See In re Nine West Holdings, Inc., No. 18-10947-SCC, Dkt. No. 1 (Bankr. S.D.N.Y. Apr. 6, 2018) (entering the order for relief). Accordingly, two years since the entry of final relief passed on April 6, 2020 (which is also more than one year after the appointment of the Litigation Trustee). However, on March 31, 2020, the bankruptcy court entered a final decree under Section 350 of the Bankruptcy Code, which closed the bankruptcy proceedings. Therefore, under § 546(a), any avoidance action pursuant to § 544 had to have been filed on or by March 31, 2020 (the earlier of the two dates). But the complaint against Marks was filed on June 5, 2020, and against Smith on June 22, 2020. Accordingly, the 554(b) claims brought by the Litigation Trustee are time-barred because they were filed after March 31, 2020. See In re Nine West LBO Sec. Litig., 505 F. Supp. 3d 292, 318 (S.D.N.Y. 2020). ("Nine West II"). And even if that were not the case, they would be also barred by § 546(a)(1)(A).

Plaintiffs nevertheless argue that issues of fact exist as to whether the statute of limitations should be equitably tolled between the Petition Date (April 6, 2018, when NWHI filed for bankruptcy) and the date when the court confirmed the Debtors' Plan and appointed the Litigation Trustee to pursue his claims (on or about March 20, 2019). See, e.g., In re Candor Diamond Corp., 76 B.R. 342, 350 (Bankr. S.D.N.Y. 1987 ("Under the modern formulation of the doctrine, the statute does not begin to run until 'the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.'"). Specifically, plaintiffs claim that equitable tolling is appropriate because before the NWHI Litigation Trust came into existence on or about March 20, 2019, the Debtors had refused to accord any value to the claims brought by the creditors. Plaintiffs' Response to Defendants' Rule 56.1 Statements of Undisputed Material Facts and Plaintiffs' Supplemental Statement of Undisputed Material Facts 56.1 ¶¶ 17-18 (Case No. 20-cv-04433, Dkt. 168) ("PRSUMF").

"To benefit from equitable tolling, a litigant must allege that extraordinary circumstances prevented him from acting in a timely manner, and these allegations cannot be raised for the first time in plaintiff's opposition papers." Guo v. IBM 401(k) Plus

6

Plan, 95 F.Supp.3d 512, 527 (S.D.N.Y. 2015) (citation omitted). The instant case does not present such "extraordinary circumstances" because the Litigation Trustee still had a whole year after the formation of the trust to pursue any claims against the defendants here without any hindrance. See also Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 322 (2d Cir. 2004) ("Equitable tolling is an extraordinary measure that applies only when plaintiff is prevented from filing despite exercising that level of diligence which could reasonably be expected in the circumstances."). That delay simply cannot be justified by plaintiffs' conclusory and vague allegations that debtors refused to acknowledge the claims before the trust was formed. Moreover, plaintiffs raise the allegations bearing on equitable tolling for the first time in their opposition to summary judgment. For these reasons, equitable tolling is inapposite in this case, and the Litigation Trustee's Section 544(b) claims as to Smith and Marks are hereby dismissed as untimely.

 II. <u>Indenture Trustee's Constructive Fraudulent Conveyance Claims Are Untimely</u>

The Moving Defendants argue that plaintiffs' state law constructive conveyance claims brought by the Indentured Trustee are also untimely. "Where, as here, the Court is exercising bankruptcy jurisdiction over state law claims under 28 U.S.C. § 1334(b), the court applies the choice of law rules of the forum

7

state to determine the applicable statute of limitations." <u>In re Adelphia Commcn's Corp. v. Bank of Am., N.A.</u> (<u>In re Adelphia Commcm's Corp.</u>), 365 B.R. 24, 57 n.136 (Bankr. S.D.N.Y. 2007). CLPR 202, New York's borrowing statute, provides that:

> An action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply.

"When a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued." <u>Deutsche Bank Nat'l Trust Co. v. Barclays Bank PLC</u>, 34 N.Y.3d 327, 334 (2019) ("<u>Deutsche Bank</u>").

The key question in this case is where the state law claims accrued. If, as the Moving Defendants claim, the Delaware four-year statute of limitations, <u>i.e.</u>, the state of the Trustee's principal place of business, controls the claims, the claims are untimely because they were commenced more than four years after the date of the allegedly fraudulent transfer (April 8, 2014).[1] 6 Del. C. § 1309(2); <u>see also</u> <u>Industriebank AG v. McGraw</u>

---

[1] The Moving Defendants argue, in the alternative, that Ohio's statutes of limitations may apply instead because U.S. Bank, the predecessor of WFSF at the time of the transfer, resides in Ohio.

8

Hill Fin., Inc., 2015 WL 1516631, at *3 (Mar. 26, 2025, S.D.N.Y. 2015) ("Corporations reside 'either in their principal place of business or their place of incorporation."). To this end, the Moving Defendants argue that the Delaware statute of limitations applies under the so-called "plaintiff-residence rule" set forth in the New York Court of Appeals' opinion in Deutsche Bank, 34 N.Y.3d at 335 (2019). According to defendants' recounting of that case, it is only the residence of the plaintiff, here the Indenture Trustee, that counts in determining where the cause of action accrued. Plaintiffs, however, argue that the New York six-year statute of limitations (as further tolled by Governor Cuomo's Executive Orders) applies instead, in which event these claims are timely. Plaintiffs argue that the New York statute of limitation is applicable because it is the so-called "place of injury" rule that defines accrual.

The Court agrees with defendants. To be sure, the "traditional definition of accrual," absent unusual circumstances such as those presented in Deutsche Bank, is that "a cause of action accrues at the time and in the place of the injury." Glob. Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (1999). In cases involving economic injury, such as the instant case, "the thrust of the

---

Since the statute of limitations under Ohio law is four years, like the limitations period under Delaware law, this difference is immaterial for the purposes of the instant motion. See Ohio Rev. Code § 1336.09(B).

inquiry is [generally] who became poorer, and where did they become poorer as a result of the challenged conduct." Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co., 585 F. Supp. 3d 540, 569 (S.D.N.Y. 2022), aff'd sub nom. Phoenix Light SF Ltd. v. Bank of New York Mellon, 66 F.4th 365 (2d Cir. 2023) (internal quotation marks and citation omitted and alteration added).

However, the Deutsche Bank case created an exception to the rule in cases brought by a trustee on behalf of trust beneficiaries where the beneficiaries are too geographically scattered to provide a "a workable basis for determining the place of economic injury." 585 F. Supp. 3d at 338. Out of concerns for predictability and uniform application of law, the New York Court of Appeals in Deutsche Bank thus applied the so-called "plaintiff-residence rule" to the claims of a litigation trustee brought "in merely a representative Capacity" because even though the trustee "did not suffer real economic loss," it was still "authorized to enforce, on behalf of the certificateholders, the representations and warranties in the relevant agreements," and "[a]ccordingly, it [wa]s appropriate ... to look to plaintiff's residence as the place where the economic injury was sustained and, consequently, where plaintiff's causes of action accrued for purposes of CPLR 202." Id. at 335, 339.

Even though the exact residences of the noteholders who are owed more than $685 million is not in the record, plaintiffs argue

10

that <u>Deutsche Bank</u> is nevertheless inapplicable because, unlike in that case, a workable basis exists to determine the place of injury to the noteholders injured by the 2014 Transaction. They further adduce evidence that approximately $ 333 million of these Notes were held by entities with New York address as of September 5, 2018, which plaintiffs argue creates triable issues of fact as to whether all or essentially all the 2014 noteholders were New Yorkers. In response, however, the Moving Defendants bring forward undisputed evidence that the sheer number and geographic diversity of the noteholders show that the place-of-injury method for the determination of accrual is "unworkable," just as it was in <u>Deutsche Bank</u>. Specifically, the Moving Defendants point to the events of 2018 and 2019, when the Bankruptcy Court solicited votes on the proposed plan and delivered ballots to a service list of 82 addresses of "banks, brokers, dealers, agents, nominees, or their agents" who then distributed the ballots to noteholders. Bankr. Dkt. No. 897 at ¶ 2(d) & Ex. P (Nominee Service List). That service list included addresses in twenty states and two provinces in Canada. <u>Id.</u> at Ex. P. Further, while over 200 noteholders returned the ballots, noteholders owning over $100 million did not. The clear conclusion from these facts is that even if this Court were to order additional third-party discovery to track these noteholders, which would be in itself an inordinately protracted and expensive process, the results would be likely incomplete, and

11

in any case the noteholders would be scattered across several states. Unlike the case of Phoenix Light SF Ltd. v. Deutsche Bank National Trust Co., which plaintiffs rely on, this situation produces an unworkable basis to establish the place of injury of the noteholders because it would require this Court to fractionalize and approximate the Trustee's claims based on incomplete and scattered information about the noteholders from over ten years ago. 585 F. Supp. 3d 540 (S.D.N.Y. 2022); see also Maiden v. Biehl, 582 F. Supp. 1209, 1218 (S.D.N.Y. 1984) ("If the beneficiaries were scattered, it would be unworkable to fractionalize one claim because some parts were time-barred.") Phoenix Light, in contrast, presented a relatively simple case with only a few trust beneficiaries (noteholders and risk shield guarantors), all of whom resided in Germany. Id. at 569-70. Accordingly, the Court easily and without any extrapolations or estimations concluded that the "claims accrued . . . in Germany." Id. Plaintiffs' reliance on Phoenix Light is therefore inapposite.

For the above-stated reasons, the Court concludes that that the constructive fraudulent conveyance claims accrued at the place of plaintiff's residence, which is Delaware. And under Delaware law, such claims are "extinguished" if not brought "within 4 years after the transfer was made." 6 Del. C. § 1309(2). The complaints here allege that the transfers to the Moving Defendants were made on April 8, 2014. The applicable statute of limitation thus ran on

12

April 8, 2018, i.e. over two years before the Indentured Trustee commenced the instant actions in 2020. The constructive conveyance claims brought by the Indenture Trustee are therefore also dismissed as time-barred.

III. **Plaintiffs' Remaining Intentional Fraudulent Conveyance Claims**

Plaintiffs' remaining intentional fraudulent conveyance claims arise under New York law. As regards these claims, the Moving Defendants argue that the Court should grant summary judgment on the intentional fraudulent conveyance claims against Marks and Smith because plaintiffs inadequately pled fraudulent intent, which must meet the heightened pleading standard of Rule 9(b).

As relevant here, the fraudulent conveyance allegations against Smith are reflected in a chart identifying the amount of Restricted Stock that he received in 2014 from NWHI. See Case No. 1:20-cv-04433-JSR, Compl. ¶ 41. The complaint against Marks alleges that the transfers from NWHI to its shareholders, including to Marks, were made with "actual intent to hinder, delay, or defraud its present or future creditors." See Case No. 1:20-cv-04433-JSR, Compl. ¶ 200. The amount of Restricted Stock received by Marks was likewise captured in a chart. See id., Compl. ¶ 41. Plaintiffs also allege several so-called "badges of fraud," such as facts about the Company's financial condition at the time of

13

the transfer and general facts about the chronology of events in question as well as the lack or inadequacy of consideration. See In re Saba Enters., Inc., 421 B.R. 626, 641-42 (Bankr. S.D.N.Y. 2009).

"The specificity requirements of Fed. R. Civ. P. 9(b) have been imposed to ensure that a defendant is apprised of the fraud claimed in a manner sufficient to permit the framing of an adequate responsive pleading. A party who fails to raise a 9(b) objection normally waives the requirement." Todaro v. Orbit Intern. Travel, Ltd., 755 F. Supp. 1229, 1234 (S.D.N.Y. Y 1991) (quotation marks and citations omitted). The Moving Defendants waived a Rule 9(b) objection by not raising it in their answers or at any time before moving for summary judgment. The Moving Defendants' motion as to the intentional fraudulent conveyance claims is therefore denied.

Accordingly, the Moving Defendants' motion is granted in part, dismissing both the 544(b) claims brought by the Litigation Trustee and the state-law constructive conveyance claims brought by the Indentured Trustee. The motion is denied as to the remaining intentional fraudulent conveyance claims.

The parties are instructed to jointly call Chambers on May 28, 2025, at 3:00 p.m. to set a trial date for the remaining claims against the Moving Defendants.

SO ORDERED.

Dated:   New York, NY

       May 23, 2025

                                                  JED S. RAKOFF, U.S.D.J.